The next case today, number 241763, Gibson Foundation, Inc. v. Rob Norris. Will counsel for appellant please introduce yourself on the record to begin. Good morning, Your Honors. I'm Karen Pickett. I represent the appellant, Rob Norris. And something that would come as a big surprise to my husband, who says I always need to get the last word. I'm not going to ask for a rebuttal time. As Your Honors know, this case has been up and down. There's a previous opinion in this case. When the court reversed the district court's grant of summary judgment for my client, it went back for trial, and now it's up on appeal after the trial. As Your Honors know, I've raised three main issues on appeal. I'd like to start with actually the one I argued last in my brief, which is the issue of judicial estoppel. As the court knows, there was sort of some back and forth about who filed what in bankruptcy, because there was Baldwin, there was Gibson, now there's the successor in interest. But in any event, despite all the evidence that was introduced, the court found that it would allow Gibson Foundation to argue that they did include, in a certain section of their bankruptcy filing, the P&O at issue here. And that was in a section called, I think it was called like historical instruments or something like that. It wasn't listed by name. And the value given for that asset was something like $47,000. As Your Honors know, in 2018, at the time that the bankruptcy petition was filed, the predecessor of Gibson Foundation had already made a demand on my client after seeing my client on the news discussing how there was a snowstorm, and the roof of his building collapsed. And he was interviewed because, thankfully, this Liberace piano was not destroyed. And in the course of the interview, my client said something to the effect of somebody asked, how much is it worth? And he said something like $500,000. And after that happened, he gets contacted by the lawyers for the predecessors. Now, that was in 2015. In 2018, when they filed for bankruptcy, not only did they not list the Liberace piano by name, but they did not include the claim that they had against my client, that they had already made the demand for the piano to be returned, and it had not been returned. On appeal, Gibson Foundation argues, well, that's, you know, the judge found that it wasn't, we weren't trying to defraud the creditors necessarily. But I'm arguing that although the judge had broad discretion whether or not to grant judicial estoppel, that I believe the judge committed an error of law in that regard. And I'd just like to read to you from the judge's decision, which is actually, the decision is actually on the docket itself. The judge says that if the bankruptcy filings were an attempt to evade creditors, the court should exercise its discretion to dismiss plaintiff's actions. And if the bankruptcy filings were not an attempt to evade creditors, defendant should be barred from making that appeal to the jury. Then she goes on to argue that, in the end, despite the litigation council taking different positions, the court does not find that there necessarily was an attempt to defraud creditors in connection with the bankruptcy filings. And so I believe that the judge thought that she needed to find that there was an attempt to defraud creditors, which obviously this was an old bankruptcy, and it wasn't really the focus of my client's case. But in any event, the Gibson Foundation attempts to distinguish cases from the circuit, which says it's not just an asset. It could be a potential asset. And it's not just defrauding creditors. You mentioned they did disclose in the bankruptcy form historical instruments, roughly 47,000. And the judge, as I understood it, said that's inconsistent with anybody maintaining that this is worth 500,000. So it let Gibson know that it couldn't make any argument or suggestion that this was worth more than 47,000. And that ruling was to your client's benefit because the smaller the value of the instrument, the more likely it was that Gibson's forerunner would have just given it away. So is this the wrong thing to do?  Goldenberg-Ramirez I don't think it's the right thing to do. Understood, Your Honor. That's the right thing to do. Ginsburg So why isn't that? That sounds like a type of equitable parsing to align positions in this case with positions in the bankruptcy case, that is just what Judicial Estoppel tries to achieve. What's the inconsistency? And if you list the instrument, then it would be redundant to list the claim, a bailment claim for the instrument. Goldenberg-Ramirez I'm not so sure, Your Honor. I believe that, and I'm not a bankruptcy expert by any means, but I believe that you have to list your assets and all claims and potential claims. And they had made a claim for demand. And we know when they filed the lawsuit in this matter, obviously in order to get diversity jurisdiction, they listed the amount in controversy as $500,000. So I guess to explain, and I understand what you're saying, because I thought the judge gave a very fair trial, and I think she was wrestling with these issues. But just to explain the purpose of Judicial Estoppel, it's not necessarily for my client's benefit. It's so that if some creditor from, you know, Gibson or Baldwin Foundation's bankruptcy is watching the news and sees that this Liberace rhinestone-encrusted piano that the Gibson Foundation itself values at $500,000 wasn't disclosed, it's not fair, right? They maybe would have taken an assignment of that. That's the issue. It's the Judicial Estoppel of taking inconsistent positions that harm, it's not necessarily harming my client. It's harming the creditors in the bankruptcy. I thought our precedent suggested that whether you were, the intention behind not listing something on the bankruptcy form could be relevant, even if it wasn't dispositive. Are you disputing that? I'm not really disputing that. I just don't think that there was really any, there was no evidence presented of intent or not intent. These were just records that were put in. I don't believe that there was any, yeah. Right. So wouldn't that support the district court's position? That there was no evidence on intent? Yeah. In other words, if some evidence of intent is needed because just the mere fact of non-listing doesn't trigger Judicial Estoppel, then what's wrong with what the district court did? Well, I'm not so sure that the case law says that there has to be an intent. Well, that's why I'm asking you. Are you saying that... And again, this is a big deal. This was made the news, and they're valuing it at $500,000. So it can't be a simple mistake. And then if they are listing it, and only listing it as $47,000... Well, I guess just before we get to the facts of this case and how you would apply it, just as a legal matter, I understood the... Are you taking the position that intent is irrelevant to whether Judicial Estoppel applies? I think it's a factor to consider, but not the only factor. Okay. So if it's a factor... Yes, it is a factor, yes. Then I guess... On what basis would we say the district court here erred, given that she seemed to think it was a factor also, and then she concludes the record just doesn't support that factor is satisfied? And in fact, there is no evidence either way on intent, so it's pretty hard to then say the district court erred. Well, except that I think if you read her decision, she's basically saying that she needs to find that intent to defraud. And that's just a simple factor. And so obviously, I argue that the court could find it, but it could be... Well, I guess that's what I'm... In this case, in the absence of the intent, what would have been the basis under our precedent for... In other words, intent alone may not be enough. Right. But in the absence of finding any intent on this record, what would be the basis for saying she was required to find Judicial Estoppel? I'm not arguing that she was required to find Judicial Estoppel. I'm arguing that... Well, she found there was no intent. Right. And you're not saying that that was error? I guess I would argue that there was no evidence one way or the other, but that yeah, there was no evidence one way or the other. You're saying that the judge said something to the effect that I must... I understand the law to require me to find intent, and I don't find intent, so I can't Judicial Estoppel. If that's the argument, what more... Right. Because as I read earlier that it says, if the bankruptcy filings were an attempt to evade predators, the court should exercise its discretion to dismiss plaintiff's actions. And then at the end it says, the court does not find that there necessarily was an attempt to defraud predators. But she doesn't say... That could be just... The first sentence could just be contextual, right? So if there were intent, then we should do it here. Not... The only way I can ever find in any case Estoppel is when there is such intent. I agree. But I do ask that the court... I mean, I do think that the way it's phrased suggests that that was her view. And again, she was the one who brought up Judicial Estoppel herself. I think she treated the case very fairly. But I do think that there was an error of law in terms of how she cabined her discretion based on this. And I would point the court to this Court's decision in the Gway case, G-U-A-Y. Thank you. Does the record reflect the disclosed assets in total of the estate in the bankruptcy proceeding? How much the total assets were disclosed? Yes. I'm sure it does, Your Honor, but I don't have that number in front of me, I'm sure. And if I just... I realize I'm running low on time here, but I do just want to bring up the point. I understand the argument that first of all, I think it was too... If you look carefully at the e-mails between the two employees who didn't testify that were admitted, they come in broadly under this 8033 plan intent exception, which I would argue there's hearsay upon hearsay upon hearsay. So some of it, I think, could be construed as intent or plan. But there's also some stuff that's really prejudicial to my client, where one of the guys is saying, oh, Rob Norris, basically, Rob Norris would be lucky to get this P&O. Everybody loves getting these P&Os. I mean, just stuff that shouldn't have come in. But more importantly, I think, than whether it meets the hearsay exception or not, is a relevance argument. I mean, I could make intentions with my husband tonight to go to dinner with my neighbors, and if there's an accident at the restaurant, is the fact that I have an e-mail with my husband saying we want to go to dinner with my neighbors to show that the neighbors were there? I mean, it's just... It doesn't make any sense. In order to form a contract, there has to be a meeting of the minds. And the exchange between the two employees doesn't establish, without being shared with Mr. Norris, doesn't establish anything. So it's not only irrelevant, but it's prejudicial. Thank you. Thank you, Your Honor. Thank you, counsel. Will attorney for the appellee please come up and introduce yourself on the record to begin? May it please the court. Kurt Schrodinger for the Plaintiff Appellee Gibson Foundation. So the standard of review for the judicial estoppel argument is abuse of discretion. The court's factual findings are clearly erroneous, and so I want to start with what the court has definitively said are the factors that this court will look at. As you know, abuse of discretion and judicial estoppel are made by the court. The court enforces them. Mainly this court's precedent is written by Judge Silva in this matter, and he says the three factors for sure are a party's earlier position and later position must be clearly inconsistent. That the party must have succeeded in persuading the prior court to accept the inconsistent position, and three, the party seeking to enforce that inconsistent position will receive some type of unfair advantage in the present litigation. And so the first factor is the party must have convinced the earlier court of an inconsistent position. Here, the district court found that didn't happen. The court ruled that a reasonable jury could have found that Gibson disclosed this asset in the Baldwin bankruptcy documents under antiques. And so the court's precedent is clear that if you don't have that first factor, the others don't matter, and judicial estoppel should not apply. Now, what this court has not come to today or not, but in Perry v. Plum, the issue of what does the district court do with intent? Do you have to have intent? And in Perry v. Plum, this court reversed the lower court because it didn't look at intent at all. And this court said, well, that is an important factor because what are we trying to solve the problem? Defrauding the court, right? And so if you didn't intend to do it, then it's probably not the mockery of judicial estoppel that we're looking for. In this case, it doesn't matter because the court made the factual determination that Gibson did disclose it in the Baldwin assets. And again, that would be an abuse of discretion standard that this court would look at it clearly erroneous. Was the court clearly erroneous in deciding that? And we had almost a day trial with both sides presented arguments. I have not seen an argument on appeal of why that finding was clearly erroneous. And it's not just that Gibson disclosed $40,000. This was a sophisticated bankruptcy. There were multiple entities, I think maybe a dozen entities involved in the bankruptcy. Am I right that what the district court said was that a jury could find that it was disclosed as opposed to that she was finding it was disclosed? Right. And so you have to look at this. That's correct, Your Honor. But you have to look at it. For purposes of the judicial estoppel analysis, is that the right, is that the relevant finding? The fact that there is enough evidence that a jury could find it? Right. And so what the court was saying in the posture here was we moved prior to trial to exclude the evidence of bankruptcy because we said it would be prejudicial. That was a motion to eliminate hearing. And the court said I agree it's prejudicial as long as you don't argue that it wasn't disclosed. I'm just saying for judicial estoppel, it would be one thing if the judge found that it was listed so there was no inconsistency. Right. But we don't have that finding. We have something else. We have a district court saying the record has enough evidence in it that a jury could find that. Right. I understand why it did that. I'm not saying that was error. But for purposes of the judicial estoppel analysis, is that for the jury or is that for the court? So she, the judge, and I agree with her because this is judge made, she said I need to resolve this issue. That's what I'm saying. So she hasn't made that finding. No, she did. What she said was based on the I understand that. I'm saying, you're saying the reason we can affirm is because of the finding that there was no inconsistency. Right. Because it was listed in the bankruptcy filing. That was her logic. But she did not find that. No, I think if you look at the hearing transcript. What did she say? She says during the hearing, I'm not going to estop you at this point. Right. Because I think you did adequately disclose it under Baldwin. Did she say that or did she say a jury could find that? No, that's the hearing. Oh. Okay. And then after trial, they moved to set aside the case. And one of the challenges was judicial estoppel. And in that order, she says, look, I don't think it applies and a reasonable jury could have found this. Right. Yeah. But here's what makes it two. But that's what I'm saying. Did she ever make the finding that they I think this is we do the jury on Monday. Tuesday we have the hearing. And the sole issue is, are we going to proceed to trial or not? Or is she going to just stop us? After that hearing, she says, we're proceeding with trial, but this is what you can't do, Gibson. If you argue it was disclosed somewhere else, like under a different bankruptcy filing, then the defendant can approach and I'm going to revisit this judicial estoppel issue, which is how you would deal with the motion limiting anyway. Right. So she's made a determination. I'm not invoking it now because I don't find now there has been some type of an attempt to defraud. So that determination is abuse of discretion. But I think her factual determination of was it disclosed. And we were just asking, is there a point where she literally says it was disclosed? Yes. She says, I think you adequately disclosed it under Baldwin. Okay. She says that in the separate hearing? Right. On Tuesday. So we take the jury on Monday. And then Tuesday, the sole issue is, are we proceeding to trial or not? Is she going to invoke judicial estoppel? And after the hearing, she says, I'm not invoking it at this time. I think you probably did disclose it under Baldwin. Probably did. Words to that effect. I don't want to put words in her mouth. But she said that. The reason I'm asking is because whether she did or not may determine whether we have to address the intent issue. Oh. Well, then she says, and besides that. Correct. We don't have to get to the intent issue. She made the right finding about no inconsistency. I agree with that. But if she didn't make that decision, the intent issue becomes front and center. Yeah, I would agree. And in that point, again, clearly erroneous was their intent. She says, no, I don't find there was intent here. But then we have the legal question of, did she have the view that you had to have an intent? Well, I think under Perry v. Plum, if I'm a district court reading that opinion, I should certainly take that into consideration. Because in that case, this court reversed the district court and said, you didn't take that into consideration. On inconsistency, isn't the test that there has to be a clear and direct inconsistency? Right. And so we have to get to that point first, which we never proved. So even if all she said was that it could go either way, a jury could go either way, that seems to be pretty close to saying there's no clear inconsistency. I agree. Right. So if she had said, I find you didn't disclose it, then we're in a second bucket, right? But she never got there. She said, I think you probably did, or was to that effect. I'm not invoking it. The burden is on them to come forward with the judicial estoppel. In this case, the court raised it sua sponte. And so she was going through the analysis and didn't convince herself to invoke it. And so it's important to remember, too, how this came in at trial. We had closed both sides, and they said, Your Honor, we want to get these two bankruptcy documents in. Okay. They had no witness, no arguments. So there's nothing more to talk about if we were remanded on this intent factor, because all they have is the bankruptcy filings. And that's just because they never proceeded with this issue below. The court raised it the Friday before trial, and it was beginning on Monday. And I just do want to say the $40,000 is the accounting principles they do in bankruptcy of depreciation and value and stuff. So the court was saying we didn't say we only had $40,000 of antiques. We were saying if you account them for with depreciation and the rules you can do with math in bankruptcy, that's what was the value of them. And that the $500,000 was what the defendant had told the press he believed it was worth. And at trial, he said, I just made that number up. And so I think if you look at all of that, the court probably didn't think we were trying to trick anyone. We probably did disclose it. And if you look at the bankruptcy filings, Gibson told the bankruptcy court, look, we have so many instruments, we cannot list everything. We can do our best. And when you're up front with the bankruptcy court like that, that's how a plan is accepted. And in this case, the creditors actually took over Gibson. And so we had the second argument, which you don't need to address in this case. Perry v. Plum leaves open. Can judicial stop or even apply when the person wasn't the one who made the representation? People who own Gibson now were not the ones who filed bankruptcy. The creditors took over. Perry v. Plum says that's an interesting idea. We don't have to read shit because there was no intent. Thank you. Thank you, counsel. That concludes arguments in this case.